IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | NO. 3:20-mj-04274 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| | ) | |
| CODARIUS HUMPHREY | ) | |

## MEMORANDUM OPINION

Defendant stands charged by criminal complaint with possession of ammunition subsequent to a felony conviction, in violation of 18 U.S.C. § 922(g)(1). Pending before the Court is Defendant's "Motion to Revoke Order of Detention" (Doc. No. 23, "Motion"). Via the Motion, brought under 18 U.S.C. § 3145(b), Defendant seeks revocation of the Magistrate Judge's order of detention (Doc. No. 22). The order of detention, which was entered after a detention hearing on January 12, 2021, was based on the Magistrate Judge's finding by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure Defendant's appearance as required. (Doc. No. 22 at 2). The Government has filed a response (Doc. No. 28, "Response") in opposition to the Motion.

## APPLICABLE LEGAL STANDARDS

"The default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F. 3d 939, 945 (6th Cir. 2010); *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.") Thus, a defendant may be detained pending trial only if the Court finds that "*no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required* and the safety of any other person and the community."

18 U.S.C. § 3142(e)(1) (emphasis added). If the italicized proposition is true, the defendant is said to pose a "flight risk," or pose a "risk of flight"; in other words, to say that a defendant poses a flight risk (a.k.a. risk of flight) is to say that no condition or combination of conditions will reasonably assure the appearance of the person as required. *See*, *e.g., United States v. Phelps*, No. 2:20-CR-74, 2020 WL 8485117, at *3 (E.D. Tenn. Nov. 16, 2020) (framing one of the two "issue[s] of detention [as] whether Defendant would pose a risk of flight, i.e. not appear for future court proceedings if released"), *report and recommendation adopted*, No. 220CR000742JRGCRW, 2021 WL 84534 (E.D. Tenn. Jan. 11, 2021). The former is essentially shorthand for the latter, both in common judicial and attorney parlance and in some statutes relating to detention/release, such as 18 U.S.C. § 3143(a)(1). This observation is significant because it entails that the Government need not show risk of "flight" in the sense of risk of the defendant fleeing the country or absconding from the jurisdiction to some other state; rather, the Government need show only that *the appearance of the defendant in court as required* cannot reasonably be assured (no matter what condition or combination of conditions is imposed). A risk of actually "fleeing" in the sense just mentioned is not required for the Government to prevail, although it may assist the Government in making the showing that the Government i*s* required to make in order to prevail since it naturally entails the risk that the defendant (having fled) will not be around to show up in court.

Here, the Government seriously has relied upon, and the Magistrate Judge found, only a risk of flight. Thus, the Court's discussion will relate solely to risk of flight.[1]

---

[1] This means, among other things, that the Court herein will paraphrase or quote case law, statutes, and relevant legal principles only in terms of what they have to say about risk of flight, even if what they have to say concerns dangerousness also.

The Government must prove risk of flight only by a preponderance of the evidence. *E.g.*, *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004). In determining whether there are conditions of release that will reasonably assure the defendant's appearance, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person;[2] (3) the history and characteristics of the person; (4) whether the defendant was on probation, parole, or other release at the time of the current offense; and (5) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). And "[i]n evaluating whether there is a risk of flight or nonappearance, the Court [may] take[ ] these additional factors into account: (1) whether

---

[2] This factor goes to the weight of the evidence of the defendant's risk of flight, not the weight of the evidence of the defendant's guilt on the pending charges. *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) (quoting *United States v. Hazime,* 762 F.2d 34, 37 (6th Cir. 1985) (noting that the weight of evidence against the person "deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused")). This is, at least in part, because "Section 3142(g) 'neither requires nor permits a pretrial determination of guilt'". *Id.* (quoting *United States v. Gebro,* 948 F.2d 1118, 1121 (9th Cir. 1991)). And it is indeed important that the court, in connection with detention proceedings, not declare a defendant's guilt (or even come close to so doing) and not confuse issues of guilt with issues properly relating instead to detention.

But evidence of a defendant's guilt on the pending charges can *indirectly be* evidence of risk of flight. That is, evidence of such guilt can constitute evidence of risk of flight to the extent that its weight suggests a motive for the defendant to flee to avoid the penalties portended by the pending charges. An out-of-circuit court explained how in an opinion that, although inconsistent with *Stone* in some respects, is persuasive and not inconsistent insofar as it noted the following:

> [T]he weight of the evidence of guilt is . . . used to determine its potential effect on flight or danger, not as a method of prematurely imposing punishment for the crime. This is the proper manner for the Court to consider the weight of the evidence against the person–how it affects flight and danger risks.

*United States v. Rodriguez-Morales*, No. 2:18-CR-0085-TOR, 2018 WL 10721074, at *2–3 (E.D. Wash. June 5, 2018). The Court then noted to the extent that the weight of the evidence of the crime charged and the penalties for the charged crime are both heavy, "the substantial weight of the evidence and the severe penalties involved may cause Defendant to pursue flight as a prison sentence becomes more certain." *Id.* In that case, "[t]his factor, although the least important, weighs heavily in favor of detention." *Id.* The Court does not quibble with this opinion's characterization of this factor as the least important, and the Court agrees that this factor can in this particular manner weigh substantially in favor of detention in a particular case, consistent with Sixth Circuit law. The Court is inclined to think of this factor as dovetailing with the factor of the nature and circumstances of the charged offense, inasmuch as the charged offense could give the defendant incentive to flee to the extent that it carries heavy potential penalties.

Here, although the Court does rely on the strength of the evidence, the Court's decision on the Motion would be no different even if the Court did not rely on the strength of the evidence.

some type of close supervision such as electronic monitoring is feasible; (2) whether the defendant has ties to other countries which would make it possible or likely for him to leave the United States; (3) and whether the defendant has ever absconded from supervision in the past, has violated conditions of release, probation or supervised release in the past, or has failed to appear in court." *United States v. Cabrera*, No. 2:09-CR-287(2), 2009 WL 5167668, at *4 (S.D. Ohio Dec. 18, 2009).

The district judge reviews *de novo*—and thus with no deference to the Magistrate Judge—the issue of whether the Government has met its burden. "Review of the Magistrate Judge's decision is *de novo,* 'although the district court "may conduct its review and base its decision on the evidence presented to the magistrate at the detention hearing."'" *United States v. Zapien*, No. 3:14-CR-00037-1, 2014 WL 1028435, at *2 (M.D. Tenn. Mar. 17, 2014) (quoting *United States v. Stokes*, No. 3:06-00204, 2006 WL 3843589, at *1 (M.D. Tenn. Dec. 22, 2006) (citation omitted)).

## ANALYSIS

According to Defendant:

> The record fails to establish by a preponderance of the evidence that Humphrey poses a flight risk. Instead, the record establishes there are less restrictive measures to sufficiently mitigate any risk of flight. Specifically, the Court can order release on conditions. Humphrey's sister will act as his third-party custodian. Humphrey will wear a GPS monitor. He will not possess firearms or other dangerous weapons. He will submit to random drug and alcohol screens, a curfew, travel restrictions and obtain employment.

(Doc. No. 23 at 3). With this argument, and the Government's burden, squarely in mind, the Court turns to the applicable factors.

The first factor in the analysis, the nature and circumstances of the charged offense, cuts slightly in favor of a finding of risk of flight. This factor is probative in that the offense, illegal possession of ammunition subsequent to a felony conviction, occurred under circumstances that,

according to the testimony (of Defendant's girlfriend) at the detention hearing, suggests unsurprisingly that Defendant specifically knew it was wrongful and even illegal for him to keep the ammunition and yet he did so anyway continuously for many months; that sort of attitude tends to indicate that Defendant is disinclined to ensure his compliance with applicable restrictions upon his conduct.

The nature of the charged offense also derives significance here from the possible penalties it portends, which (depending on how severe they potentially could be) may or may not motivate him to flee to avoid them, as noted in a footnote above. And in this respect, the nature of the charged offense is neither particularly good or particularly bad for Defendant.[3] Considering the maximum penalties and potential guideline range in the event of conviction, the charged offense gives Defendant some incentive to flee, though not as much of an incentive as many other charged offenses this Court sees.

This relates to the next factor, strength of the evidence of risk of flight. In particular, as noted in the footnote above, strong evidence of *guilt on the charged crime* is evidence of risk of flight to the extent that potential penalties for the charged crime are significant enough to potentially motivate a defendant to flee in an effort to avoid the prospect of facing them. But here, whatever the strength of the evidence of guilt on the charged crime, the potential penalties are such that, at least relative to many other federal crimes, the charged crime does not provide a particularly great incentive to flee, as noted above. Regarding evidence of risk of flight that is *not* evidence of the charged crime, the evidence is strong. As noted below, it consists of aspects of his criminal

---

[3] In so stating, the Court assumes *arguendo* (to Defendant's benefit in this analysis) that Defendant would not feel incentivized to flee specifically by the possibility (the magnitude of which the Court declines to speculate upon) of a greatly enhanced sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e).

record that are undisputed and testimony (from witnesses called by Defendant at the detention hearing) that is undisputed. The second factor thus cuts in favor of detention.

With respect to the third factor, the history and characteristics of Defendant, the Court starts by noting Defendant's criminal history.[4] Even disregarding aspects of his criminal record that are unclear—several of which Defendant points out in the Motion—Defendant's record includes several things that suggest risk of flight. To begin with, he has numerous significant convictions, and on at least three (and likely four) separate occasions, he was sentenced for felonies. On each of those occasions, his sentence (at least three of which resulted in multi-year sentences) was either reduced to or combined with a term of probation. This leads to the next problem for Defendant, his record on probation. Defendant has had his probation revoked in each of two different state cases in Georgia (once on Fulton County in 2018 and once in Cobb County in 2013), which causes the Court great concern even if it ignores two alleged violations (and also a bench warrant in another case) of which the disposition seems unclear. Moreover, in 2019 he had a probation warrant issued for failure to report (apparently to his probation officer), and although the disposition of this is unknown, it seems highly unlikely that such a straightforward and easily verified charge would have been leveled falsely. Finally, Defendant has a conviction for evading arrest. Collectively, this criminal history is serious and suggests that Defendant simply cannot be trusted to appear when he is supposed to or to comply with the law or conditions of release. So to summarize, the third factor cuts substantially in favor of detention.

As for the fourth factor, Defendant was on probation or supervised release when the instant alleged crime occurred (which, the testimony of his girlfriend made clear, began in July or August

---

[4] The Court's knowledge of Defendant's criminal history derives in part from the Pretrial Services Report and in part from the testimony from the detention hearing.

2020 and concluded upon Defendant's arrest in December 2020). So this factor also cuts in favor of detention.

Regarding the fifth factor, the nature of the danger posed to other persons, the Court construes it as inapplicable here, given that dangerousness is not an asserted basis for detaining Defendant.

As for the three supplemental factors applicable in the case of risk of flight, the first appears neutral; close supervision may be theoretically possible, but its likely efficacy is in doubt, given both Defendant's history of non-compliance with conditions of release and his uncertain and relatively unstable residential situation illuminated at the detention hearing. The second factor cuts in Defendant's favor, as there appears to be no indication of Defendant having ties or capabilities to leave the United States. But the third factor cuts substantially against Defendant, given his history of probation violations.

At the detention hearing, disputing that he posed a flight risk, Defendant relied upon the testimony of his sister (whom he offered as a potential third-party custodian) and girlfriend. Having read the transcript of the detention hearing word for word, the Court can say that such testimony did not move the needle much for Defendant. Defendant's counsel did not have much to work with here, and the testimony of these witnesses was somewhat general and not compelling. It may have suggested rays of hope for Defendant in terms of trying to turn his life around (for example by remaining employed). But it also suggested that Defendant may not always have been forthcoming with these witnesses about his history in the criminal justice system and that Defendant knowingly possessed ammunition for months, knowing so doing was wrong, and after agreeing to his girlfriend's demands that he dispose of the ammunition once she found it at the their mutual residence last summer (in a box left with them by a friend who was moving to California). The

overall picture was not one to give the Court confidence that either of these witnesses would be able to monitor or control the behavior of Defendant to help keep him compliant.

As noted above, Defendant has suggested conditions of release that Defendant claims would reasonably assure Defendant's appearance in court. If followed by Defendant, perhaps they could. But the Court would have to rely on Defendant's compliance with such conditions, and the Court cannot do so given his history of violating conditions of release, evading arrest, and failing to report to his probation officer. As for electronic monitoring, it certainly is of some value in ensuring that Defendant does not flee the jurisdiction. But it is of less value in ensuring that Defendant proactively appears as required for court rather than consciously or negligently avoiding his responsibilities to do so, which unfortunately would be consistent with his history of shirking his duties to, and avoiding the criminal justice system.

## CONCLUSION

Upon *de novo* review of the issue, the Court finds that that no condition or combination of conditions will reasonably assure the appearance of Defendant as required. Therefore, under 18 U.S.C. § 3142(e)(1), he must be detained.[5] Accordingly, the Motion (Doc. No. 23), seeking revocation of the order of detention, is **DENIED.**

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[5] Had the Court found otherwise, under 18 U.S.C. § 3142(e)(1), it would have had to determine whether the Government had established, by clear and convincing evidence, that Defendant posed a danger to other persons or the community. Here, it seems clear that the Court would have determined that the Government had not done so (or even claimed to have done so). But the Court need not reach this issue given its finding regarding risk of flight.